637 So.2d 591 (1994)
STATE of Louisiana, Plaintiff-Appellee,
v.
William BOSTIC, Defendant-Appellant.
No. 26,000-KA.
Court of Appeal of Louisiana, Second Circuit.
May 4, 1994.
*592 Geary S. Aycock, West Monroe, Joseph (Sib) Abraham, Jr., El Paso, TX, for defendant-appellant.
Jerry L. Jones, Dist. Atty. by J. Michael Ruddick, Monroe, for plaintiff-appellee.
Before NORRIS, J., and LOWE and PRICE, JJ. Pro Tem.
LOWE, Judge Pro Tem.
The Ouachita Parish district attorney charged appellant William E. Bostic with conspiracy to distribute marijuana, a Schedule I substance, and possession of a Schedule I substance with intent to distribute in violation of LSA-R.S. 40:966(A)(1). The conspiracy charge was dropped, and Bostic entered a plea of not guilty to the charge of possession with intent to distribute. At a trial on the merits, the jury found Bostic guilty as charged. Bostic was sentenced to eleven years at hard labor and was fined $5,000 with one year default time should he fail to pay. Bostic appeals his conviction and sentence, assigning six errors:
(1) The trial court erred in denying Bostic's motion to suppress.
(2) The trial court erred in granting the Motion to Quash the subpoenas issued to the Louisiana State Police for production of arrest reports and documents of 54 other similarly situated out-of-state defendants and denying the Public Records Request for said documents.

*593 (3) The trial court erred in deviating from the felony sentencing guideline recommendations of 24 to 36 months discretionary jail sentence.
(4) The trial court erred in finding aggravating circumstances sufficient to deviate from the sentencing guidelines under Sections 209(A) and (B).
(5) The trial court erred in finding that the 750 pounds of marijuana in this case created an aggravating circumstance under the Felony Sentencing Guidelines, Section 209(B), thereby justifying deviation from said felony guideline recommendations.
(6) The trial court erred in imposing an excessive sentence in violation of the U.S. Constitution, and Article 1, Section 20 of the Louisiana Constitution.
We affirm.

FACTS
Bostic was traveling east on Interstate 20 through Ouachita Parish December 19, 1992. The road was wet from rain earlier in the day. Bostic approached a construction zone in a large white Mallard motor home with North Carolina plates. The speed limit changed from 65 miles per hour to 45 miles per hour. Thinking the road was about to narrow to one lane, Bostic sped up to pass other vehicles.
Trooper Neal noticed Bostic as he entered the construction zone. His mental impression that Bostic was exceeding the speed limit was confirmed when the motor home entered his radar range going 70 miles per hour. Trooper Neal stopped Bostic to issue a traffic citation for speeding.
When Bostic produced a driver's license from Tennessee, Trooper Neal asked him about the two differing states on the driver's license and the plates. Bostic became nervous, broke eye contact, made outward hand movements, and rubbed his head back and forth. Trooper Neal thought it odd Bostic would be traveling alone in such a large vehicle. Bostic's presence on I-20 in Ouachita Parish when he claimed to be coming from Slidell, Louisiana, made Trooper Neal suspicious.
When asked for the motor home's registration, Bostic invited Trooper Neal inside while he looked for the papers. Bostic became more nervous. He moved his hands back and forth, he licked his lips as if his mouth were dry, and he appeared to be getting ill. By the time Bostic retrieved the vehicle registration, Trooper Anderson had arrived. When Trooper Neal went to his unit to run a license and registration check, Trooper Anderson walked over and advised Trooper Neal that Bostic was nervous and should be watched.
After the license and registration proved to be in proper order, Trooper Neal returned to where Bostic stood and asked his permission to search the vehicle. Bostic consented, signing the consent to search form Trooper Neal gave him. Trooper Neal searched the motor home and found about 750 pounds of marijuana. Bostic was arrested and charged with possession of marijuana with intent to distribute.

DISCUSSION
Assignment of error number 1. The trial court erred in denying Bostic's motion to suppress.
Bostic argues the initial traffic stop was pretextual, his continued detention was illegal, and his consent to search was invalid. Under such circumstances, he reasons, the search was illegal, so the marijuana should have been suppressed.
A. THE INITIAL TRAFFIC STOP AS PRETEXT. In his first argument in this assignment of error, Bostic asserts Trooper Neal's subjective intention when he stopped the vehicle was to search it. This intent was motivated only by Bostic's out-of-state license plate. This subjective intention on the part of Trooper Neal, Bostic says, makes the stop a violation of his constitutional rights. Thus the evidence seized is the product of an illegal search, and should have been suppressed.
Trooper Neal testified he first saw Bostic speeding through a construction zone, on a wet road, in a large motor home, passing other vehicles. Bostic admitted he sped up *594 to pass others, thinking the road would change to one lane.
There is a split of authority concerning how to assess the constitutionality of allegedly pretextual searches. The United States Court of Appeals for the Fifth Circuit adopted an objective test in U.S. v. Causey, 834 F.2d 1179 (5th Cir.1987), saying: "So long as the police do no more than they are objectively permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry." Causey, supra at 1184.
Here Trooper Neal was authorized to stop Bostic and to issue him a citation for speeding. The fact he may have hoped to gain an opportunity to search the motor home for drugs is of no moment. Trooper Neal's stop of Bostic is not invalid under Causey.
A more subjective standard for evaluating allegedly pretextual searches was stated by the United States Court of Appeals for the Eleventh Circuit in United States v. Smith, 799 F.2d 704 (11th Cir.1986) and adopted by the Tenth Circuit in U.S. v. Guzman, 864 F.2d 1512 (10th Cir.1988). Under this test, an objectively reasonable search is not invalid solely because the officer acted out of improper motivation. Instead, the court should inquire whether a reasonable officer would have made the stop in the absence of the invalid purpose. Smith, supra at 709-710; Guzman, supra at 1517.
The record here is devoid of evidence concerning general practice among troopers, or what a reasonable trooper would have done, when confronted by such a flagrant speeding violation. However, common knowledge dictates that a reasonable trooper would have stopped a motor home driving 25 miles per hour in excess of the speed limit given the road conditions at the time. Trooper Neal's stop of Bostic is not invalid under Smith and Guzman. Thus the initial traffic stop was valid and not pretextual, so Bostic's first argument with regard to this assignment of error is without merit.
B. LEGALITY OF BOSTIC'S CONTINUED DETENTION. In his second argument for suppression of the marijuana, Bostic contends his continued detention was illegal. He claims that after Trooper Neal determined his drivers license and registration were in order, he should have been allowed to leave without further delay for additional questioning. Bostic argues Trooper Neal's retention of his license and registration kept him from being free to go, amounting to an illegal detention and a violation of Bostic's constitutional right to be free from unreasonable searches and seizures. It appears Bostic argues this illegal detention vitiates his later consent to the search of the motor home, making the marijuana a fruit of the illegal detention which should have been suppressed at trial.
Since the initial stop of Bostic was legal, the question presented is whether at any time before he consented to the search of his vehicle, the detention became illegal. To determine whether Bostic was detained too long, the court must look to the diligence of the police in pursuing a means of investigation likely to confirm or to dispel their suspicions quickly. United States v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); State v. Walker, 530 So.2d 1200 (La. App. 2d Cir.1988), writ denied, 532 So.2d 763 (1988); State v. Arrington, 556 So.2d 263 (La.App. 2d Cir.1990). There is no bright-line rule for when a detention lasts too long. Each instance must be assessed in view of the surrounding circumstances. Arrington, supra at 266.
In State v. Bunnell, 517 So.2d 439 (La. App. 1st Cir.1987), the court found an otherwise lawful traffic detention became illegal once a state trooper exceeded the limits of the permissible detention for the express and sole purpose of obtaining defendant's consent to search. There, the trooper purposefully withheld issuing a traffic citation because he was suspicious and wanted to determine if the defendant was involved in some criminal activity. Rather than issuing the citation and allowing defendant to proceed on his way, the trooper detained the defendant for half an hour, far beyond the time deemed reasonable to investigate a minor traffic violation. He did so solely for the purpose of obtaining consent to search the car, having only a generalized suspicion about the occupants based on their nervousness and out-of-state driver's license and registration. The *595 court held the marijuana seized during that consent search had to be suppressed because the defendant, who initially refused permission to search the vehicle, gave his consent only after being illegally detained.
Unlike the Bunnell case, Bostic never refused to give his consent for Trooper Neal to search the motor home. He freely gave his consent after being detained no longer than ten minutes. Roughly five minutes passed while Bostic located his registration. In the remaining time, Trooper Neal waited for the information on Bostic's license and registration. Trooper Neal filled out the consent form in his car while waiting for the return on the drivers license and registration information.
In Arrington, supra, the court found the cause, method, and duration of a detention for a traffic violation was reasonable. In that case, immediately after stopping the defendant, the officer observed his nervous behavior, his inability to produce proof of registration and insurance, and his efforts to block the officer's view of the car's interior. The officer checked the defendant's driving record and discovered defendant's background of drug and weapon offenses. A drug dog already on the scene quickly alerted. The court held the officer diligently pursued the investigation in a manner likely to confirm or to dispel his suspicions quickly.
Likewise, Trooper Neal diligently pursued his investigation in a manner likely to confirm or to dispel his suspicions quickly. Before obtaining Bostic's consent to search, Trooper Neal logically proceeded by checking Bostic's license and registration. He completed his check within ten minutes.
Although Trooper Neal never returned Bostic's license and registration, and although he subjectively intended to detain the vehicle until he searched it, Bostic was not being illegally detained. If Bostic had initially refused consent, and had Trooper Neal continued to detain him, the outcome here might have been different. However, under the circumstances, Bostic's consent was not given while he was being illegally detained, hence this second argument is meritless.
C. THE CONSENT IS INVALID. In his final argument for the suppression of the marijuana, Bostic asserts the consent to search was invalid because it was not freely and voluntarily given. He states that when he consented to the search of the vehicle, he was confronted by two armed state troopers, Troopers Neal and Anderson. He further states that when Trooper Neal obtained his consent to search, Trooper Neal never told him the reason for the search or the extent of the search, never fully explained the consent form, never explained his right to refuse consent, never gave him his Miranda warnings, and never returned his drivers license or registration. Bostic argues the totality of these circumstances made his consent to search involuntary, mandating suppression of the marijuana.
Whether Bostic was informed of his Miranda rights before he gave his consent to the search is irrelevant here. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), applies only to the admissibility of statements taken from a suspect during custodial interrogation.
[A] consent to search does not amount to a statement, either inculpatory or exculpatory, stemming from custodial interrogation. It is neither "testimonial" nor "communicative" and therefore is not a statement against which Miranda was intended to protect.

State v. Ealy, 530 So.2d 1309, 1315 (La. App. 2d Cir.1988), writ denied.
Thus, Miranda warnings are not necessary to validate a consent search. United States v. D'Allerman, 712 F.2d 100 (5th Cir.), cert. denied, sub nom. D'Alleman v. United States, 464 U.S. 899, 104 S.Ct. 254, 78 L.Ed.2d 240 (1983); State v. Williams, 353 So.2d 1299 (La.1977), cert. denied, 437 U.S. 907, 98 S.Ct. 3098, 57 L.Ed.2d 1138 (1978).
Because Trooper Neal legally stopped Bostic, this case does not present a situation where consent resulted from violation of his constitutional rights. The issue in this case is whether Bostic's consent was freely given.
It is well settled that a warrantless search conducted pursuant to a valid consent is permitted by the Louisiana and United *596 States constitutions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Bodley, 394 So.2d 584 (La.1981); State v. Murphy, 465 So.2d 811 (La.App. 2d Cir.1985). A consent is valid when it is freely and voluntarily given by a person with common authority or other sufficient relationship to the premises or effects sought to be inspected. Bodley, supra; State v. Owens, 480 So.2d 826 (La.App. 2d Cir.1985), writ denied, 486 So.2d 748, cert. denied, 479 U.S. 840, 107 S.Ct. 145, 93 L.Ed.2d 87 (1986). While a valid consent search is a recognized exception to the warrant requirement, the burden is on the state to prove the consent was freely and voluntarily given. Voluntariness is a question for the trier of fact to be determined by the totality of the circumstances. The trial court's finding is to be given great weight upon appellate review. State v. Edwards, 434 So.2d 395 (La.1983); State v. Brown, 478 So.2d 600 (La.App. 2d Cir.1985).
While knowledge of the right to refuse consent is one factor to be taken into account, it is not determinative of the issue of voluntariness of the consent. State v. Dunbar, 356 So.2d 956 (La.1978).

State v. Dickerson, 579 So.2d 472, at 480 (La.App. 3d Cir.1991).
The consent to search form Bostic signed was concise and easily understandable. It told him the reason for the search and the extent of the search. In pertinent part, the consent form states:
In order to cooperate in an investigation being conducted by the Louisiana Office of State Police, I, Kenneth [sic], residing at Rt. 3, Box 317, Proffitt Rd., Gatlinburg, TN 37738, do hereby voluntarily authorize TFC J.C. Neal of the Louisiana Office of State Police to search 88 Mallard, N.C. DYS4272, and its contents, which are owned or controlled by me and remove any items the Louisiana Office of State Police deems pertinent to their investigation, providing a receipt is furnished for the removed items.
No promise, threat, or coercion of any kind has been made against me by the Louisiana Office of State Police and I have been informed by the above named State Police Officer that I may refuse to consent to any search and that I may revoke my consent to search at any time.
/s/ W.E. Bostic
Before Bostic signed the consent form, Trooper Neal explained it to him. After it was explained, Bostic silently read that form for himself and indicated he understood. Thus the record shows Bostic understood he was giving Trooper Neal permission to search the vehicle and its contents. The form clearly informed Bostic he had the right to refuse or to revoke his consent.
This case is typical of cases where officers obtain motorists' consent to search their vehicles. Generally, officers perform searches when they are on duty. Officers on duty usually wear uniforms which include side arms. In this case, there is no evidence which suggests the troopers threatened Bostic with their side arms other than by wearing them at the time he gave his consent. If the fact the troopers were wearing side arms is sufficient to vitiate consent, then practically all consent searches will be invalid for the same reason.
Bostic has not shown Trooper Neal's retention of his drivers license and registration made his consent invalid. Bostic consented immediately after Trooper Neal completed his background check. Nothing suggests Trooper Neal threatened to keep Bostic's license and registration unless he signed the consent form. From the face of the record, it appears Bostic was neither coerced nor threatened and the state met its burden of showing Bostic's consent was freely and voluntarily given. This assignment of error lacks merit.
Assignment of error number 2. The trial court erred in granting the state's motion to quash the subpoenas duces tecum and in denying the public records request for certain documents.
Before the motion to suppress hearing, Bostic sought to discover information contained in numerous unrelated criminal police reports and citations. He issued at least nine subpoenas duces tecum directed to officers of the Department of Public Safety and Corrections, Office of State Police. He requested *597 the initial arrest reports and traffic citations issued to 54 other out-of-state defendants. Bostic intended to use the information to prove the conduct of the state police violated his constitutional rights. He claimed that if the vehicles had not been from out-of-state, the officers would not have enforced the traffic violations and sought to search the vehicles.
The Department moved to quash Bostic's subpoenas duces tecum. In its motion to quash, the Department argued the number of items sought was so great that the subpoenas were unreasonable and oppressive within the meaning of LSA-C.Cr.P. Art. 732 and that the information sought had no rational relationship with the material issues in the merits of Bostic's case. Second the Department argued that any information directly pertaining to Bostic's criminal case must be sought by motion adverse to the district attorney and is subject to the discovery rules set out in LSA-C.Cr.P. Arts. 716 et seq. Next, the Department stated that some of the information sought might be public record, obtainable only upon proper request and payment of the appropriate fee. Finally, the Department argued that because the subpoenas called for the appearance of nine state police officers, the imposition on the public safety function and the disruption of state business was unreasonable and oppressive.
The district court, in part, quashed and vacated Bostic's subpoenas duces tecum by limiting him to ten requests for production. At that time Bostic filed a public records request. Although he designated the district court's denial of his public records request as error, the record shows no such denial and Bostic did not argue such a denial as error in his brief.
In regard to the subpoenas duces tecum, the Code of Criminal Procedure provides:
[t]he court shall issue subpoenas for the compulsory appearance of witnesses at hearings or trials when requested to do so by the state or the defendant.
LSA-C.Cr.P. Art. 731.
A subpoena may order a person to produce at the trial or hearing, books, papers, documents, or any other tangible things in his possession or under his control, if a reasonably accurate description thereof is given; but the court shall vacate or modify the subpoena if it is unreasonable or oppressive.
LSA-C.Cr.P. Art. 732.
The fourth circuit had interpreted these provisions as being mandatory if certain conditions are met. In State v. Shropshire, 468 So.2d 582 (La.App. 4th Cir.1985), and State v. Phillips, 465 So.2d 794 (La.App. 4th Cir. 1985), the court stated:
Unless a subpoena requesting the production of books, documents, etc., is unreasonable or oppressive, the court has no discretion, but "shall issue the subpoenas ... when requested to do so by the State or the defendant." The opposing party or the person to whom the subpoena is directed may move the court to quash the subpoena. The court may then decide if there exists [sic] grounds for quashing the subpoena.

Shropshire, supra at 583.
We should also include the additional codal requirement that the request include a "reasonably accurate description" of the items requested.

Phillips, supra at 795.
However, in State v. Buras, 439 So.2d 1187 (La.App. 4th Cir.1983), the court held the trial judge had discretion to decide whether to issue a subpoena duces tecum. These cases can be reconciled by reading Buras to state that the decision of whether grounds exist for vacating or modifying the subpoena rests within the discretion of the trial judge.
In the present case, the trial court did not express its reason for vacating and modifying Bostic's subpoenas. However, pursuant to the Code of Criminal Procedure, it could only have decided to do so if the subpoenas either failed to give reasonably accurate descriptions, or were unreasonable or oppressive. This decision rested within the trial court's discretion. If the district court abused its power in vacating and modifying the subpoenas by limiting Bostic to ten subpoenas, then he was denied his mandatory right to have twelve witnesses summoned at this hearing. LSA-C.Cr.P. Art. 738. However, Bostic has *598 not shown any abuse of the trial court's discretion.
Even if the trial court abused its discretion, Bostic has not demonstrated that the error affected his substantial rights. LSA-C.Cr.P. Art. 921. This is so because the information sought by Bostic would not have proved his constitutional rights were violated.
The evidence shows Bostic was stopped because he was driving a large white motor home, albeit with out-of-state plates, which passed other vehicles on a wet road at 70 miles per hour in a 45 miles per hour construction zone. Unless Bostic proved that large white motor homes bearing Louisiana license plates which passed other vehicles on wet roads at 70 miles per hour in a 45 miles per hour construction zone were not stopped by the state police, he could not prove his equal protection rights were violated. The information Bostic sought would not prove such vehicles were not stopped by the state police. This assignment of error is without merit.
Assignment of error numbers 3, 4, and 5. The trial court erred in deviating from the Felony Sentencing Guidelines and in finding aggravating circumstances.
Here, the statutory minimum sentence exceeds the sentence recommended by the Guidelines. In such cases, the Guidelines provide that the statutory minimum becomes the sentence recommended by the Guidelines, unless aggravating circumstances justify imposing a more severe sentence. La.S.G. § 211; LSA-R.S. 40:966(B)(2).
In State v. Smith, 629 So.2d 333 (La.1993), the Louisiana Supreme Court made it clear that a sentencing court has "the discretion to deviate from the Guidelines, even grossly, where the record supports such a deviation," so long as the court specifies "for the record the ... aggravating circumstances which justify the departure." Smith, supra at 337.
The court observed "the Guidelines specifically avoid mandating the amount of weight to be applied to aggravating ... factors which differentiate a specific defendant from the typical defendant." Smith, supra at 336-337. Additionally, § 209(B)(19) is an "omnibus factor which provides the trial court with even greater discretion to deviate from the Guidelines when an atypical case arises for which the aggravating ... considerations do not fall into one of the listed factors." Smith, supra at 337. A reviewing court is required "to look to both the Guidelines and the factual findings upon which a sentence is based." Smith, supra at 336.
La.S.G. § 209(B)(14) states that if "the offense was a major economic offense" then that may be considered an aggravating factor. This section allows upward departure where a defendant's act caused major economic damage to the victim, like arson or theft involving a large economic loss. State v. Strother, 606 So.2d 891 (La.App. 2d Cir. 1992), writ denied, 612 So.2d 55 (La.1993); State v. Perow, 607 So.2d 888 (La.App. 2d Cir.1992).
In the present case, the sentencing court factually found that Bostic was in possession of more than 750 pounds of marijuana with the intent to distribute. The street value of the drugs was somewhere between $450,000 and $750,000. The court considered this a major economic offense, and therefore an aggravating factor. According to Strother and Perow, both supra, the trial court erred in considering this an aggravating factor since possessing marijuana with the intent to distribute does not cause major economic damage to the victims.
However, the sentencing court did properly treat the sheer quantity as an aggravating circumstance, distinguishing this case from the typical. In State v. Lowery, 609 So.2d 1125 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (La.1993), this court held 271 pounds of marijuana in a possession with intent to distribute case did constitute an aggravating factor. The court said, "the sentencing guidelines do not contemplate that transporting 271 pounds of marijuana across state lines is a typical case of possession with intent to distribute." Lowery, supra at 1133. Accordingly, if 271 pounds is enough to make the Lowery case atypical, then 750 pounds is an amount large enough to bring the present case outside the realm of the typical case. Therefore, the trial court did not err in finding *599 aggravating circumstances and deviating from the Felony Sentencing Guidelines. These assignments of error have no merit.
Assignment of error number 6. The trial court erred in imposing an excessive sentence.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Bonanno, supra; State v. Hogan, 480 So.2d 288 (La.1985); State v. Richardson, 545 So.2d 714 (La.App. 2d Cir. 1989).
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, we do not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La. 1983); State v. Madison, 535 So.2d 1024 (La. App. 2d Cir.1988).
When Bostic was sentenced on May 3, 1993, the statutory penalty for possession of marijuana with intent to distribute was imprisonment at hard labor for not less than five years nor more than thirty years and payment of a fine of not more than fifteen thousand dollars. LSA-R.S. 40:966(B)(2). The actual sentence imposed is within the statutory limits. Thus, absent a showing of manifest abuse of discretion, Bostic's sentence should not be set aside as excessive.
In ruling on Bostic's motion to reconsider sentence, the sentencing court considered that possessing 750 pounds of marijuana is a very serious offense, evidencing an intent to participate in or facilitate major drug trafficking. Considering that federal drug conspiracy charges have been brought against Bostic, and that novice drug couriers usually do not transport the amount of marijuana Bostic possessed, the evidence adduced at the trial and sentencing hearing tends to prove he was in fact involved in an ongoing drug distribution organization.
Additionally, the state pointed out two cases involving a substantial amount of marijuana, but less than in the case at bar, in which the defendants received comparable sentences. In State v. Perez, 569 So.2d 609 (La.App. 2d Cir.1990), writ denied, 575 So.2d 365 (La.1991), the defendant was sentenced to imprisonment for ten years for possessing 96.6 pounds of marijuana with intent to distribute. Perez was an original supplier with authority to accept payments for and make decisions regarding the marijuana distribution.
In State v. Thompson, 543 So.2d 1077 (La. App. 2d Cir.1989), writ denied, 551 So.2d 1335 (La.1989), the defendant was sentenced to seven years, six months in prison for possessing 260 pounds of marijuana with intent to distribute. Although Thompson was a first felony offender, the court considered the large amount of contraband and Thompson's alcohol and drug abuse as factors for upholding the sentence. The court noted Thompson received no more than half the maximum sentence allowable and held it was not excessive.
Bostic faced a maximum of thirty years in prison and a fifteen thousand dollar fine. The actual sentence imposed is about a third of that maximum. Considering the circumstances of this case, we cannot say the trial court abused its discretion in sentencing Bostic.

CONCLUSION
The trial court correctly denied Bostic's motion to suppress the marijuana seized during the search of the vehicle. Bostic was legally stopped for flagrantly violating traffic laws by speeding on Interstate 20, and none of his constitutional rights were violated. Bostic's consent to the search of the vehicle was freely and voluntarily given.
The trial court did not abuse its discretion in deciding grounds existed for modifying the subpoenas duces tecum issued by Bostic. Although the trial judge never stated grounds for doing so, Bostic has not pointed out any abuse of the trial court's discretion.
*600 The trial court properly found sufficient aggravating circumstances present to depart from the sentence recommended by the Felony Sentencing Guidelines. Despite the trial court's erroneous finding that this was a major economic offense, it correctly found the quantity of marijuana alone was a sufficient aggravating circumstance justifying upward departure from the Guidelines.
The sentence imposed does not violate either the United States or the Louisiana constitution. The sentence imposed is within the statutory limits, and it cannot be said that, given the circumstances of this case, the trial court abused its discretion in sentencing Bostic to approximately one-third the maximum allowable sentence.
For the foregoing reasons, Bostic's conviction and sentence are
AFFIRMED.
NORRIS, J., concurs in the result.