708 So.2d 506 (1998)
STATE of Louisiana, Appellee,
v.
Eric M. DIXON, Appellant.
No. 30495-KA.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1998.
Louisiana Appellate Project by Paula C. Marx, Lafayette, for Appellant.
Richard Ieyoub, Attorney General, William R. Coenen, District Attorney, Penny Wise-Douciere, Assistant District Attorney, for Appellee.
Before NORRIS, BROWN and PEATROSS, JJ.
PEATROSS, Judge.
Reserving his right to appeal the denial of his motion to suppress, Defendant, Eric M. Dixon, pled guilty to one count of conspiracy to distribute marijuana, a violation of LSA-R.S. 40:966 and LSA-R.S. 14:26. The court sentenced Defendant to the agreed-upon term of five years imprisonment at hard *507 labor. Defendant now appeals, arguing that the trial court erred in denying his motion to suppress. For the following reasons, we affirm the conviction and sentence.

FACTS
On the morning of September 18, 1995, Louisiana State Trooper Glen D. Guillory was patrolling Interstate 20 when he saw an eastbound vehicle traveling less than one car length behind another. The vehicle bore New Mexico license plates. Using the timing device built into the radar system in his patrol car, the trooper determined that the following vehicle was 0.03 seconds behind the leading vehicle. The trooper testified that he had been trained that a time of less than 0.07 seconds gave too little distance for an average person to safely react to danger. LSA-R.S. 32:81 prohibits a driver from following another vehicle "more closely than is reasonable and prudent ...," and the trooper believed that the following vehicle was in violation of this provision.
Accordingly, the trooper stopped the car. The trooper identified Defendant as the driver of the car; Defendant had one passenger, a white female. Trooper Guillory testified at the hearing on the motion to suppress that Defendant admitted he had been following too closely. The trooper also said that Defendant told him he and his companion were going to Tennessee for "a couple of days." The trooper requested the rental papers on the car after he learned that the car was rented to the passenger.
The passenger, Ms. Susan Scott, opened her purse to retrieve the rental papers and the trooper states he saw, "[a] scratch pad that they use to filter the crack in the crack pipes and the eight ball pipes and stuff when they smoke them." Ms. Scott told the trooper that they were on vacation and going to Tennessee or Kentucky to see the scenery. She also said they were planning to be gone "approximately two weeks." The trooper testified that Defendant and Ms. Scott remained nervous throughout the encounter; he said that most people are nervous initially but relax after a while.
Examining the rental agreement, the trooper discovered that the car had been rented three days before and was due to be returned to the rental agency only two days later. The trooper obtained a criminal history check on Defendant and the passenger. Ms. Scott had no record, but Defendant "had numerous narcotics violations plus criminal violations on his record." Ms. Scott denied knowledge of Defendant's criminal history and told the trooper that "as far as she knew, there [were] no narcotics within the vehicle."
The trooper asked Ms. Scott for consent to search the car. She signed the customary consent to search form, and the trooper testified that she appeared to understand what she was doing and that her consent appeared to be free and voluntary. The trooper found crack pipes in the passenger compartment and, in the trunk, he found a locked bag which smelled strongly of fabric softener. As the trooper testified at trial, fabric softener is a common masking scent for narcotics. A deputy sheriff brought a narcotics dog to the scene and the dog alerted on the vehicle and on the bag.
The trooper asked Ms. Scott for the key to the bag and she told him that Defendant had the key. Defendant gave the key to the trooper, the trooper opened the bag and found several bundles of marijuana. Both Defendant and Ms. Scott were arrested and charged with possession of marijuana with intent to distribute and conspiracy to distribute marijuana.
Defendant filed a motion to suppress the evidence. He argued that the trooper had no justification for stopping the vehicle, that this was a "drug courier profile" stop and, accordingly, the detention of Defendant was unlawful.[1] After a hearing at which the court heard the above testimony from the trooper, the motion was denied. The State agreed to dismiss the possession with intent charge, as well as a charge of felony bail jumping, in exchange for Defendant's guilty plea to conspiracy to distribute marijuana and agreement *508 to a five-year sentence which would run concurrently with any other sentence. Defendant entered his plea under North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (pleading guilty without admitting guilt) and under State v. Crosby, 338 So.2d 584 (La.1976) (reserving his right to appeal the denial of the motion to suppress).

DISCUSSION
On appeal, Defendant reiterates his argument that Trooper Guillory stopped Defendant's vehicle because it fit a drug courier profile and not because of a traffic violation. In support of this argument, he asserts that it was impossible for the trooper to have operated the timing device in the manner described, that the measured time of 0.03 seconds at highway speeds would place Defendant's car only two feet behind the lead car and that the trooper's account of the stop was not credible because he was unable to remember many of the details surrounding the incident.
The State bears the burden of showing the admissibility of evidence seized without a warrant. La.C.Cr.P. art. 703(D). On appeal, the factual determinations of the district court in deciding a motion to suppress are entitled to great weight because of the district court's greater ability to assess the credibility of witnesses. State v. Paggett, 28,843 (La.App.2d Cir. 12/11/96), 684 So.2d 1072, 1073.
In order to stop an individual in his automobile without a warrant, a police officer must have a reasonable suspicion that the individual has committed, or is about to commit, an offense, including the violation of a traffic regulation. Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); State v. Matthews, 366 So.2d 1348 (La.1978); Paggett, supra.
Trooper Guillory testified that, according to his observations, Defendant's car was "less than a car length apart" from the lead car when he timed them. Regardless of the accuracy of his numeric measurement, the trooper was entitled to stop Defendant's vehicle for violating LSA-R.S. 32:81 because of his observations.
LSA-R.S. 32:81(A) provides:
The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway.
Trooper Guillory testified, and the ticket he wrote Defendant reflects, that traffic was "heavy" at the time he stopped Defendant. This trooper had 15 years of experience and it was his opinion that Defendant was following too closely for the traffic conditions.
The trial court accepted this conclusion and Defendant has not shown that the trial court erred in doing so. In addition, none of Defendant's complaints about the trooper's testimony, individually or in the aggregate, are sufficient to overturn the decision of the trial court to accept this testimony and find that the initial stop of Defendant was reasonable. The State proved that the trooper stopped Defendant based upon reasonable suspicion that Defendant was committing a traffic violation. The initial stop of Defendant, therefore, was reasonable.
Defendant next complains that he was illegally detained by the trooper and this illegal detention tainted his passenger's subsequent consent to search. Defendant has the right to challenge the validity of Ms. Scott's consent to search the car because he has been adversely affected thereby. La. Const. art. I, § 5. This contention, however, is without merit.
The continued detention of a motorist after a traffic stop must be based on reasonable cause, something less than probable cause, according to the facts and circumstances known to the officers. State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Paggett, supra at 1074. There is no bright-line rule. State v. Bostic, 26,000 (La.App.2d Cir. 5/4/94), 637 So.2d 591, writ denied 94-1476 (La.10/14/94), 643 So.2d 159. We consider the diligence of the officers in pursuing a means of investigation likely to quickly confirm or dispel their suspicions. United States v. Sharpe, 470 U.S. 675, *509 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); State v. Bostic, supra.
In this case, the record shows that the time between the initial stop and the consent to search, as shown on the traffic ticket and the consent to search form, was ten minutes. The trooper became suspicious when Defendant remained nervous throughout their encounter. His suspicion grew when Defendant and Ms. Scott gave differing accounts of their actions which were both inconsistent with the documentation for the rental car. Finally, the trooper had at least reasonable cause to believe that the vehicle contained contraband when he saw drug paraphernalia in plain view in Ms. Scott's purse when she retrieved the rental documents. The trooper made this observation while he was still processing the traffic citation. He obtained Ms. Scott's consent to search shortly thereafter.
Considering these facts, we conclude that Defendant and Ms. Scott were not illegally detained before Ms. Scott gave consent to search the car. The trial court, therefore, correctly denied Defendant's motion to suppress, and this assignment of error is without merit.

CONCLUSION
For the above reasons, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The United States Supreme Court, in Reid v. Georgia, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980), defined drug courier profile as, "a somewhat informal compilation of characteristics believed to be typical of persons unlawfully carrying narcotics."