733 So.2d 33 (1999)
STATE of Louisiana, Appellee,
v.
Robert George DRAKE, Jr., Appellant.
No. 31,528-KA.
Court of Appeal of Louisiana, Second Circuit.
January 20, 1999.
*35 Louisiana Appellate Project By J. Wilson Rambo, Monroe, for Appellant.
Richard Ieyoub, Attorney General, Robert Levy, District Attorney, A. Scott Killen, Assistant District Attorney, for Appellee.
Before BROWN, STEWART and PEATROSS, JJ.
STEWART, J.
This criminal appeal arises from the Third Judicial District Court, Parish of Lincoln, the Honorable R. Wayne Smith presiding. The defendant, Robert G. Drake, Jr. was convicted by bench trial of possession of marijuana with intent to distribute, in violation of LSA-R.S. 40:966. The defendant filed a motion to suppress, which was heard and denied by the trial court. Thereafter, the defendant entered a Crosby plea in exchange for a seven-year sentence cap. The defendant was sentenced to seven years imprisonment at hard labor. The defendant now appeals. We affirm.

FACTS
In the early morning hours of January 22, 1997, Ruston Police Department (RPD) Officer Eric Watson was parked in the median of Interstate 20 in Lincoln Parish. Officer Watson, using his radar, clocked a vehicle going 71 miles-per-hour in a 65 mile-per-hour zone. The officer stopped the car, which was driven by one Alfonso Brown and also occupied by the defendant, Drake. Brown stepped out of the car while Drake remained inside. The officer testified that:
[Brown] made me feel very uncomfortable while I was speaking with him. I generally try to keep aa feasible distance between myself and whoever I'm speaking with just for safety purposes. Mr. Brown continued to step closer to me. I had to step back several times to maintain awhat I felt to be a safe distance between myself and theand the subject. I noticed this to be nervous behavior on his behalf. Called for another officer to assist me. Had very bulky clothing on that would have easily concealed a weapon.
The officer engaged Brown in conversation. Brown told Officer Watson that the men were going to a funeral, but Brown could not give the name of the deceased. Brown said that the vehicle belonged to his uncle, but Brown could give no other information about his uncle.
Brown did not have a driver's license or photo ID, so while Officer Watson waited for backup, he used his radio to see if *36 Brown had a Mississippi driver's license, as he claimed. Because of Brown's peculiar behavior and baggy clothes, the officer decided to perform a pat-down search to make sure that Brown was unarmed.
While conducting the search, the officer felt something unusual in one of Brown's pockets. The officer did not remove the item from the pocket; instead, he asked Brown what it was. Brown replied that the item was marijuana. The officer could not remember whether he or Brown then pulled out the drugs. Consequently, Watson placed Brown under arrest.
Meanwhile, RPD Sgt. Timothy Parker arrived with a dog trained to sniff narcotics. Officer Watson testified that he ordered Drake out of the car and handcuffed him immediately, but could not recall whether he read Drake the Miranda warnings. Officer Watson then asked the Drake "[was] this his vehicle, did he know whose vehicle it was." Drake told the officer that the car belonged to him. Officer Watson asked Drake if there were any guns, other weapons or narcotics in the car, and Drake said that there were not. Drake refused the officer's request for permission to search the car.
Officer Parker then walked the drug dog around the car. The dog "alerted" on the car's trunk, and the officers then searched the trunk. Therein they found a closed box containing 11½ pounds of marijuana. The officers then arrested Drake. Subsequently, they learned that both men had outstanding warrants.
Drake filed a motion to suppress, urging generally that any evidence seized was seized illegally. At the hearing on the motion, Drake argued that his statement and the physical evidence should be suppressed. The court denied the motion and issued written reasons for its ruling. The defendant, Drake, appeals, urging that the trial court erred in overruling or denying the motion to suppress.

MOTION TO SUPPRESS
In assignment of error number one and two, the defendant, Drake, urges that the trial court erred in overruling or denying the motion to suppress and that the felony conviction and resulting sentence are constitutionally infirm. Drake further urges that the conviction and sentence must be reversed due to illegal and unconstitutional search and seizure, as argued in the Motion to Suppress.
LSA-Const. Art. 1, § 5 provides:
Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
LSA-C.Cr.P. art. 703 provides, in pertinent part:
A. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained.
B. A defendant may move on any constitutional ground to suppress a confession or statement of any nature made by the defendant.
D. On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.
Because the state sought to introduce the defendant's statement and evidence seized without a warrant, the state had the burden of proving that the evidence *37 was admissible. As Drake was ultimately adversely affected by the seizure of drugs from Brown's person, he is entitled to argue for the suppression of that evidence. On appeal, the factual determinations of the district court in deciding a motion to suppress are entitled to great weight because of the district court's greater ability to assess the credibility of witnesses. State v. Dixon, 30,495 (La. App.2d Cir.2/25/98), 708 So.2d 506, 508.
LSA-C.Cr.P. art. 215.1 provides, in pertinent part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
D. During detention of an alleged violator of any provision of the motor vehicle laws of this state, an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity. However, nothing herein shall prohibit a peace officer from compelling or instructing the motorist to comply with administrative or other legal requirements of Title 32 or Title 47 of the Louisiana Revised Statutes of 1950.
Officer Watson's uncontradicted testimony established that Brown was driving the vehicle at 71 miles-per-hour in a 65 mile-per-hour zone. Thus, the officer had reasonable suspicion that the vehicle's driver was in violation of LSA-R.S. 32:61 and/or 32:63. Because of this suspicion, the officer had the authority to stop the vehicle in which Drake was a passenger. Dixon, supra.
Brown, the driver, could produce no driver's license. Officer Watson acted reasonably by using his radio to try to confirm Brown's identity and to learn whether Brown had a valid Mississippi driver's license, as he claimed. This check was a part of the traffic stop and did not constitute an extended detention. See Dixon, supra. During this time, Officer Watson became concerned by Brown's behavior.
Our supreme court in State v. Hunter, 375 So.2d 99, 102 (La.1979), said:
While it is true that an officer is never justified in conducting a pat-down for weapons unless the original detention itself was justified, a lawful detention for questioning does not necessarily give the officer the authority to conduct a patdown for weapons. Even after a lawful investigatory stop, a police officer is justified in frisking the subject only under circumstances where a "reasonably prudent man ... would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909. Further, the officer's belief is not reasonable unless the officer is "able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." Sibron v. New York, 392 U.S. at 64, 88 S.Ct. at 1903, 20 L.Ed.2d at 935. It is not necessary that the investigating officer establish that it was more probable than not that the detained individual was armed and dangerous; it is sufficient that he establish a "substantial possibility" of danger. See Comment, Terry Revisited: Critical Update on Recent Stop-and-Frisk Developments, 1977 Wis. L.Rev. 877, 896.
It is sufficient that an officer establish a "substantial possibility" of danger by *38 pointing to particular facts which support such a reasonable inference. State v. Bolden, 380 So.2d 40, 42 (La.1980), cert. denied, 449 U.S. 856, 101 S.Ct. 153, 66 L.Ed.2d 70 (1980).
Officer Watson was alone on the side of the road in the early morning hours with two subjects. Brown, the subject outside of the car, wore bulky clothing which "could easily have contained a weapon." Brown had no driver's license or other identification, and he could not tell the officer the identity of the person to whose funeral he was allegedly traveling. During their conversation, Watson had to step away from Brown "several times" to maintain what he felt was a safe distance because Brown continued to advance toward him. These facts go beyond a mere hunch or suspicion butparticularly with reference to Brown's persistent advancessuffice to instill a reasonable suspicion of danger in an officer in Watson's position. Hence, Watson's frisk of Brown was justified.
In Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the U.S. Supreme Court established the so-called "plain feel" exception to the warrant requirement, holding that police may seize an item so long as (1) they are lawfully in a position to feel the item and (2) the item's incriminating character is immediately apparent. The character of the item in Brown's pocket containing drugs was not immediately apparent, but according to the uncontradicted testimony of the officer, he did not seize the item when he felt it. Rather, because he was unable to identify the object, he asked Brown what it was. At that point, Brown was not under arrest and he was free to decline to answer the officer's question. However, Brown elected to tell the officer that the item contained contraband, and at that point the officer was free to seize the item.
Because the item in Brown's pocket contained what appeared to be marijuana, Officer Watson then had probable cause to arrest Brown without a warrant for possession of marijuana. LSA-C.Cr.P. art. 213.
At the same time Watson arrested Brown, Officer Parker and the drug dog arrived. A canine sniff test by a well-trained narcotics detection dog does not constitute a search within the meaning of the Fourth Amendment. State v. Paggett, 28,843 (La.App.2d Cir.12/11/96), 684 So.2d 1072. Once the drug dog alerted, the officers had probable cause to search the car. The search without a warrant was justified in this case because of the "automobile emergency" exception. Pennsylvania v. Labron, 518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); State v. Kalie, 96-2650 (La.9/19/97), 699 So.2d 879; Paggett, supra. Under this exception, the officers had the right to search the containers in the trunk because that is where they had probable cause to believe the drugs would be found. California v. Acevedo, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991); State v. Wells, 593 So.2d 465 (La. App. 2d Cir.1992), writ denied, 598 So.2d 357 (La.1992). Hence, the drugs were lawfully seized.
There remains the question of the admissibility of the Drake's statement that the car belonged to him. After the discovery of the marijuana on Brown's person but before the discovery of the marijuana in the trunk, Officer Watson ordered Drake out of the vehicle and handcuffed him. The officers did not give Drake the warnings pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). When the officers asked Drake to whom the car belonged, Drake said that the car was his.
The trial court found that the statement was admissible because Drake was not under arrest at the time. However, Drake argues that he was arrested when Officer Watson ordered him from the car and handcuffed him and that his subsequent *39 statement was thus inadmissible because of the absence of Miranda warnings. The state has not addressed this issue in brief.
The statement in question was evidence that the car belonged to Drake. The officer's report indicates that the vehicle bore Texas license plates. Like Louisiana (LSA-R.S. 47:506), Texas allows the release of vehicle registration information to any peace officer. V.T.C.A. Transportation Code § 502.008. Officer Watson had the right to order Drake out of the car and to learn his identity. State v. Landry, 588 So.2d 345 (La.1991).
The protections of Miranda are applicable when a person is the subject of a custodial interrogation. The state must show that an accused who makes an inculpatory statement during custodial interrogation was first advised of his Miranda rights. State v. Alford, 29,343 (La. App.2d Cir.5/9/97), 694 So.2d 1162, 1166, writ denied, 97-1844 (La.11/14/97), 703 So.2d 1292. When a vehicle is stopped even for a traffic violationofficers may lawfully order its passengers to exit the vehicle. Maryland v. Wilson, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997); Landry, supra; State v. Poland, 30,790 (La.App.2d Cir.6/24/98), 715 So.2d 688. That act alone, however, does not necessarily mean that the passengers are in custody for purposes of interrogation.
Whether or not a subject is in custody depends upon all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on movement of the degree associated with a formal arrest. The initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned. Stansbury v. California, 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994); Berkemer v. McCarty, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).
Drake was handcuffed when he made the statement. While this does show that he was seized for purposes of the Fourth Amendment, in some cases handcuffing alone does not automatically turn a stop into a custodial stop. See, e.g., State v. Stracener, 94-998 (La.App. 3rd Cir.3/1/95), 651 So.2d 463, writ denied, 97-0696 (La.11/7/97), 703 So.2d 1261; State v. Solomon, 93-1199 (La.App. 3rd Cir.3/2/94), 634 So.2d 1330. However, unlike those cases, the officers in this case had no special justification for handcuffing Drakehe had not tried to fight them or to run away. In Alford, supra, at 1167, this court indicated that handcuffing was one act relevant to the subject's impression of his status.
The use of physical restraints such as handcuffs in conjunction with questioning has an undeniably coercive effect. Among the factors to be considered are that the driver of the vehicle, Brown, was already handcuffed and under arrest, that the focus of the investigation turned toward Drake, that Drake was ordered out of the vehicle, handcuffed immediately and then questioned. The totality of the circumstances in this case shows that a reasonable person in Drake's place would not perceive that he was free to leave. Stansbury, 511 U.S. at 325, 114 S.Ct. at 1530. Only in the rarest of circumstances should this court approve the use of statements obtained from a physically restrained person who has not been Mirandized.
In the instant case, the officer erred in not advising Drake of his Miranda rights. However, the police would inevitably have discovered that Drake was the owner of the vehicle. The officer could have discovered that the vehicle was registered to Drake through a check with his dispatcher. There is no showing in this record that Drake's statement was the only way that the state could have connected the vehicle to the Drake. "[W]hen, as here, the evidence in question would inevitably have been discovered without reference to the police error or misconduct, *40 there is no nexus sufficient to provide a taint and the evidence is admissible." State v. Nelson,459 So.2d 510, 515 (La. 1984) Nix v. Williams, 467 U.S. 431 at 447, 104 S.Ct. 2501 at 2511, 81 L.Ed.2d 377 at 390 (1984). Accordingly, we find that the trial court erred in its ruling on Drake's statement, but for the aforementioned reason, this error was harmless.
At sentencing, the trial court informed the defendant, Drake, that the prescriptive period for post-conviction relief applications "probably begins to run today." The prescriptive period for post conviction relief is three years from the date of sentence. The three-year prescriptive period does not begin to run until the judgment is final under LSA-C.Cr. P. art. 914 or 922; thus, prescription has not yet begun to run. State v. Mock, 602 So.2d 776 (La.App. 2d Cir.1992); State v. Harvey, 26,613 (La.App.2d Cir.1/25/95), 649 So.2d 783.
Therefore, we direct the district court to send appropriate written notice to the defendant within 10 days of the rendition of this opinion and to file proof of defendant's receipt of such notice in the record of the proceedings. State v. Mock, supra; State v. Smith, 600 So.2d 745 (La.App. 2d Cir.1992). This defect has no bearing on the sentence and is not grounds to reverse the sentence or remand the case for resentencing. State v. Mock, 602 So.2d 776 (La.App. 2d Cir.1992); State v. Cox, 604 So.2d 189 (La.App. 2d Cir.1992); LSA-C.Cr.P. arts. 921, 930.8(C).

DECREE
For the above assigned reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.