628 So.2d 156 (1993)
STATE of Louisiana
v.
Joe Willie GIBSON.
STATE of Louisiana
v.
Johnny Edward GIBSON.
Nos. 25,470-KA, 25,471-KA.
Court of Appeal of Louisiana, Second Circuit.
December 1, 1993.
*158 Arthur Gilmore, Jr., Monroe, for appellants.
Richard Ieyoub, Atty. Gen., Baton Rouge, Jerry L. Jones, Dist. Atty., Marcus R. Clark, Asst. Dist. Atty., Monroe, for appellee.
Before NORRIS, LINDSAY and BROWN, JJ.
LINDSAY, Judge.
The defendants, Joe Willie Gibson and Johnny Edward Gibson, were each charged with possession of cocaine with intent to distribute, in violation of LSA-R.S. 40:967, and possession of marijuana with intent to distribute, in violation of LSA-R.S. 40:966. Joe Gibson pled guilty to possession of cocaine with intent to distribute and was sentenced to 20 years at hard labor; Johnny Gibson pled guilty to possession of marijuana with intent to distribute and was sentenced to 10 years at hard labor, plus a fine of $2,500, or default time of one year in lieu thereof. The remaining charges against the defendants were dropped. Both defendants filed motions for reconsideration of their sentences, which were denied. The defendants appealed. For the reasons assigned below, we *159 affirm the convictions and sentences of both defendants.

FACTS
In early 1992, the Metro Narcotics Unit in Ouachita Parish was alerted to cocaine and marijuana sales at the Monroe home of Joe and Sadie Gibson; their son Johnny also resided there. An undercover police officer went to the Gibson residence and purchased cocaine from one of Joe's other sons. Subsequently, a search warrant for the Gibson house was obtained.
On May 21, 1992, law enforcement officers executed the search warrant. When the officers arrived, they found Joe Gibson outside. A search of his person revealed a pill vial with seven rocks of crack cocaine and $96 out of $100 in Metro Narcotics buy money from an earlier undercover purchase. Additionally, officers recovered a pistol which was concealed near Joe Gibson.
Upon entering the house, the officers encountered Johnny, Sadie, and other family members, including three minor children. During their execution of the search warrant, the officers recovered a total of 88 rocks of crack cocaine, 30 plastic bags of marijuana, more than $3,000 in cash, and four pistols.
Both Joe and Johnny Gibson were charged with possession of cocaine with intent to distribute and possession of marijuana with intent to distribute. Sadie Gibson was also charged. However, on October 14, 1992, pursuant to a plea agreement, Joe pled guilty to possession of cocaine with intent to distribute; the charge of possession of marijuana with intent to distribute was dismissed. Also pursuant to a plea agreement, Johnny pled guilty to possession of marijuana with intent to distribute; the charge of possession of cocaine with intent to distribute was dismissed. Additionally, the state agreed to dismiss all charges against Sadie.
On October 30, 1992, the defendants appeared in court for sentencing. At this time, the state made an oral motion to conduct a sentencing hearing. Although the defendants objected, the trial court granted the state's motion. The scheduled sentencings were upset, to be re-set. A sentencing hearing was held on December 17, 1992. At that hearing, testimony was presented by Officer Don Chase of the Ouachita Parish Sheriff's Office. He testified in detail about the execution of the search warrant at the Gibson residence, as well as other aspects of the investigation, including the results of interviews with the defendants.
On January 11, 1993, the defendants were sentenced. Joe was sentenced to a term of imprisonment of 20 years at hard labor, with credit for time served, on the charge of possession of cocaine with intent to distribute. Johnny was sentenced to a term of 10 years at hard labor on the charge of possession of marijuana with intent to distribute, plus a fine of $2,500, or default time of one year in the parish jail, with credit for time served.
The defendants filed motions to reconsider sentence, asserting that the trial court had erred in imposing excessive sentences and in making upward departures from their sentencing guideline grid cells. Both motions were denied.
The defendants appeal. They assign the following as error: (1) the trial court erred in granting the state's oral motion for a sentencing hearing; (2) the trial court erred in departing from the guidelines grid and failed to properly specify the basis for such a departure; and (3) the trial court erred in imposing unconstitutionally excessive sentences.

SENTENCING HEARING
The defendants contend that the trial court erred in granting the state's oral motion for a continuance of their sentencings because the motion was not written as required by LSA-C.Cr.P.Art. 707. They also maintain that they were prejudiced by the continuance because it allegedly caused them to receive more severe sentences.
Although sentencing hearings are not required by the Code of Criminal Procedure, they are generally conducted as a matter of due process and fairness to allow the defendant a chance to rebut false or invalid information of a substantial nature that might influence the sentencing court. State v. Bosworth, 360 So.2d 173 (La.1978); State *160 v. Telsee, 388 So.2d 747 (La.1980). When a defendant obtains such a hearing, the state may be required to show a factual basis for its contentions, and the defendant is given an opportunity to contradict or explain this showing and to present mitigating facts and circumstances. State v. Telsee, 388 So.2d at 750. On the other hand, the state may also seek a sentencing hearing in order to fully present information to the court concerning the defendant's background, the circumstances of the crime, the existence of aggravating (or mitigating) circumstances, and any other relevant information which may assist the trial court in arriving at a proper sentence.
The continuance of any post-trial proceeding is discretionary with the presiding judge; absent a showing of prejudice, his ruling will not be disturbed. Cf. State v. Barrios, 425 So.2d 980 (La.App. 5th Cir. 1983); State v. Gentry, 462 So.2d 624 (La. 1985); State v. Ball, 482 So.2d 840 (La.App. 2d Cir.1986); State v. Williams, 554 So.2d 141 (La.App. 2d Cir.1989), writ denied, 560 So.2d 21 (La.1990).
Here, the trial court, clearly aware of the importance of sentencing hearings and the aggravating factors involved in the defendants' cases, granted the state's motion for a sentencing hearing. The granting of this motion obviously necessitated the postponement of the scheduled sentencings to a later date. The defendants have failed to show that they were prejudiced by this procedure. They do not complain that incorrect information was presented to the trial court, only that the court was fully informed of the details surrounding the offenses in question. It is mere speculation on their part that they received harsher sentences as a result of the sentencing hearing. However, they were also presented with an opportunity to present their version of the offenses and any mitigating factors.
We further find that there was no undue delay in conducting the sentencing hearing. The defendants originally appeared before the court for sentencing on October 30, 1992. The sentencing hearing was conducted on December 17, 1992, approximately six weeks later, and the sentences were actually imposed on January 11, 1993, less than a month after the hearing.
Based on the foregoing, we find no error in the trial court's action in declining to pass sentence until a sentencing hearing had been conducted. Therefore, this assignment of error is without merit.

UPWARD DEPARTURE FROM SENTENCING GUIDELINES GRIDS
In their next assignment of error, the defendants contend that the trial court erred by making upward departures from the sentencing ranges set forth in their respective grid cells of the Felony Sentencing Guidelines. They also assert that the trial court failed to specify on the record the basis for the departures.
The guidelines grid reflects the designated sentence range to be used in the "typical case." Upward departures from the designated sentence range of the guidelines grid should be made when one or more aggravating circumstances, listed in La.S.G. § 209(B), significantly differentiates the particular case from the "typical case." La.S.G. § 209(A)(3). State v. Brown, 616 So.2d 792 (La.App.2d Cir.1993). If the trial court finds one or more aggravating circumstances, then the grid range for the "typical case" is inapplicable and the trial court must exercise its reasoned discretion in determining the appropriate sentence. State v. Strother, 606 So.2d 891 (La.App. 2d Cir.1992), writ denied, 612 So.2d 55 (La.1993).
If a judge departs from the designated sentence range, the guidelines do not specify the sentence to be imposed, but they require that the sentence be proportional to the seriousness of the offense and the offender's criminal history. La.S.G. § 209(A)(4)(a); State v. Brown, supra. Said another way, if a departure from the guidelines is justified, the judge is free to pronounce a sentence commensurate to the circumstances of the case without consideration of the proportionality of the sentence to the guidelines grid. State v. Lowery, 609 So.2d 1125 (La.App. 2d Cir.1992), writs denied, 617 So.2d 905 (La. *161 1993); State v. Brown, supra. The sentencing court must state for the record the reasons for departure which shall specify the mitigating or aggravating circumstances and the factual basis therefor. La.S.G. § 209(A)(4)(b); State v. Perow, 607 So.2d 888 (La.App. 2d Cir.1992).
The requirement that a departure sentence be proportional to the seriousness of the offense and the severity of the offender's prior criminal history is based on Louisiana's constitutional requirement that a sentence not be excessive. LSA-Const.Art. I, § 20. Thus, upon finding a proper upward departure, this court reviews the sentence for unconstitutional excessiveness. See La. S.G. § 101, 209; State v. Strother, supra.

Joe Gibson
In imposing sentence upon Joe Gibson, the trial court found that he was classified according to grid cell 3-E, which called for between 48 and 60 months of incarceration. However, the trial court found sufficient aggravating circumstances to warrant an upward departure. As aggravating factors, the trial court considered the defendant's age of 66 years and the large quantity of drugs involved. In mitigation, it considered the defendant's poor health. The trial court further noted that according to his own son, Joe had been selling drugs to approximately 200 customers and buying an ounce of cocaine at a time. (However, according to the evidence presented at the sentencing hearing, narcotics officers believed that the defendants were actually purchasing and selling five times that amount of cocaine.) The trial court also noted that the defendant's home was within 1,000 feet of an elementary school, and that the defendant's daughter (or daughter-in-law) and her three minor children apparently lived in the same house where the drugs were sold. Consequently, as the court found that the defendant was operating a "crack house" in the true sense of the meaning, it imposed a sentence of 20 years at hard labor, with credit for time served.
We find that the trial court properly found at least one aggravating factor warranting an upward departure. La.S.G. § 209(B)(15) is designed to allow an upward departure for a large scale drug offender who receives substantial profit from drug activities that are ongoing. Joe was obviously engaged in substantial drug trafficking and had been for at least six months prior to his arrest.

Johnny Gibson
The trial court found that Johnny Gibson was classified in grid cell 4-F, which recommended a period of incarceration of 18 to 36 months. However, the trial court found that an upward departure in sentencing was justified in his case for many of the same reasons as his father, most notably La.S.G. § 209(B)(15). Johnny, who was 22 years old when he was sentenced, admitted that he had been selling drugs for profit since age 14 and that he had averaged a monthly income of between $500 and $600 from the sales. Furthermore, he participated with other family members in running a crack house involving large quantities of cash and drugs. Therefore, the trial court properly found an aggravating factor warranting an upward departure from the guidelines grid.
This assignment of error has no merit.

UNCONSTITUTIONALLY EXCESSIVE SENTENCE
The defendants also contend that the trial court erred in imposing unconstitutionally excessive sentences.
Whether the sentences are too severe depends on the circumstances of each case and the background of each defendant. A sentence violates LSA-Const.Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or is the purposeless or needless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Strother, supra. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks one's sense of justice. State v. Richardson, 545 So.2d 714 (La.App. 2d Cir.1989).
The sentencing court is given wide discretion in imposing a sentence within the *162 statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of that discretion by the sentencing court. State v. Square, 433 So.2d 104 (La.1983); State v. Madison, 535 So.2d 1024 (La.App. 2d Cir.1988); State v. Strother, supra.
Under LSA-R.S. 40:967, the offense of possession of cocaine with intent to distribute carries a possible term of imprisonment of between 5 and 30 years at hard labor and a possible fine of not more than $15,000. Joe Gibson, whose misdemeanor criminal record began in 1948 and continued consistently through 1968, was sentenced to two-thirds of the maximum term of imprisonment; however, no fine was imposed upon him.
The sentencing range for possession of marijuana with intent to distribute pursuant to LSA-R.S. 40:966 is imprisonment at hard labor for between 5 and 30 years and a fine of not more than $15,000. Johnny Gibson was sentenced to one-third of the maximum sentence possible for this offense and a relatively small fine of only $2,500. The record reveals that this defendant had been selling drugs for about eight years. He had a juvenile record and several misdemeanor convictions as an adult.
Neither sentence imposed by the trial court shocks or offends our sense of justice. Both defendants benefited from their plea agreements whereby one charge against each was dismissed, thereby significantly reducing their sentencing exposure. Also, the charges against Sadie Gibson, Joe's wife and Johnny's mother, were dismissed.
See and compare State v. Rattler, 605 So.2d 211 (La.App. 2d Cir.1992), in which a 25-year-old defendant who originally faced four drug distribution charges pled guilty to two of the charges. He was sentenced to 15 years at hard labor and a fine of $5,000 on one charge, and 4 years at hard labor and a fine of $1,000 on the other remaining charge. He had a sporadic history of employment and paying child support, and his primary source of income was drug sales.
See also State v. Lamb, 566 So.2d 462 (La.App. 2d Cir.1990), writ denied, 569 So.2d 985 (La.1990), wherein this court affirmed two concurrent 30-year sentences on charges of possession of cocaine with intent to distribute for a first felony offender who moved to Louisiana for the specific purpose of increasing his drug trafficking profits.
Based on the foregoing, we find that the sentences imposed on the defendants were not unconstitutionally excessive. Therefore, this assignment of error is without merit.

CONCLUSION
For the reasons stated above, the convictions and sentences of the defendants are affirmed.
AFFIRMED.