645 So.2d 286 (1994)
STATE of Louisiana, Appellee,
v.
Michael Shannon CHRICEOL, Appellant.
No. 26449-KA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1994.
*287 Stephens & Stephens by Sonny N. Stephens, Winnsboro, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, William R. Coenen, Jr., Dist. Atty., Penney Wise-Douciere, Asst. Dist. Atty., Rayville, for appellee.
Before SEXTON and STEWART, JJ., and PRICE, J. Pro Tem.
SEXTON, Judge.
The defendant, Michael Shannon Chriceol, pled nolo contendere to a charge of manslaughter in violation of LSA-R.S. 14:31. The court sentenced him to 40 years at hard labor, the maximum sentence allowed under the statute. The defendant appeals his sentence as excessive. We affirm.
On February 1, 1993, shortly before 11:00 p.m., the body of Ruben Montez, also known as "Crow," was found in a cane thicket some 20 to 30 feet from his 1979 Ford Thunderbird which was parked on the side of Mudline Road south of Bee Bayou in Richland Parish. A baseball cap and a pool of blood were found in the road. It appeared that Crow, or his body, had been drug across the road into the cane thicket. Crow had been badly beaten. So much blood was on his face that he was unrecognizable. His shirt had been pulled over his head and down around his arms possibly to render him defenseless during the beating. His right shoe and sock were off his foot. The sock was tied around his neck. The autopsy later revealed Crow's cause of death as strangulation with this sock, as well as loss of blood. He was 30 years old, married with three children.
The last person seen with Crow was the defendant. In fact, the defendant and Crow had been seen together several times that day riding around in Crow's car and purchasing beer. After questioning, the defendant was arrested on February 2, 1993, and later charged with second degree murder. In a voluntary statement to the police the morning after the murder, the defendant admitted that he had been with Crow that day, and after a whole day riding around together drinking beer, smoking crack cocaine, and antagonizing one another, they ended up in a fight at the place where Crow's body was found. The defendant admitted to severely beating Crow, but claimed no knowledge of the sock found tied around Crow's neck. He claimed that Crow was alive and moaning on the road when he left him.
In addition to the statement of defendant admitting that he had beaten Crow, the state was prepared to adduce testimony from others with whom the defendant had spoken about the incident and which, if credible, indicated that the defendant knew Crow was dead when he left him, and that the defendant had, in fact, killed Crow.
Faced with this evidence, the defendant pleaded nolo contendere to a reduced charge of manslaughter.[1] The trial court sentenced the defendant to 40 years at hard labor, the maximum sentence for the crime. The defendant filed an oral motion for reconsideration and requested that the sentencing grid, which designated a sentencing range from 17 ½ to 20 years for the typical case, be placed into the record. The court denied the motion for reconsideration and entered the sentencing grid into the record. Defendant now appeals, asserting that the sentence is constitutionally excessive.
Although counsel did not expressly state the grounds for his motion for reconsideration, a review of the sentencing transcript discloses that counsel simultaneously requested that the court state for the record *288 what the sentencing guidelines recommended, "specifically with regard to the court's determination that he did [sic], Mr. Chriceol, has received a break because of the reduction of the original charge, uh, and also the specification that he has multiple offenses." It is implicit in counsel's request, made simultaneously with his motion to reconsider, that the grounds for the motion for reconsideration were whether the record supported court's reasons for the dramatically upward departure from the sentencing guidelines.
Defendant subsequently filed an assignment of error asserting that the trial court failed to comply with LSA-C.Cr.P. Art. 894.1 and that it totally ignored the sentencing guidelines in sentencing the defendant. Defendant further asserted that the sentence imposed is harsh, cruel, excessive, and unusual considering the nature of the crime and the facts surrounding the charge and, hence, is unconstitutional.
The thrust of defendant's argument centers around the trial judge's articulated reasons for imposing the maximum sentence rather than following the sentencing guidelines. These reasons included the "break" the defendant received from the reduced charge from second degree murder to manslaughter, the defendant's criminal history, and the fact that the defendant was on probation at the time of the instant offense. Defendant contends that, given the facts of the case, manslaughter is the crime he should have been charged with in the first instance. Therefore, he argues, the purported benefit he received from the reduced charge is illusory. Defendant also submits that the court failed to consider mitigating factors and that his criminal history reflects no convictions or even arrests for any violent offenses. Defendant characterizes the events that led to the death of Crow as an ordinary drunken brawl and, had Crow not died from the fight, the combatants would have been friends again before the night was over.
The defendant was charged by grand jury indictment of the second degree murder of Ruben Montez in violation of LSA-R.S. 14:30.1. The applicable part of the statute in this case defines second degree murder as follows:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm....
The defendant contends that the second degree murder charge is inappropriate because the elements of the statute are inapplicable to the facts of the instant case. Specifically, defendant contends that the defendant and the victim were good friends, that they merely got into a drunken brawl and hence, there was no specific intent on the part of the victim as required by the statute. Consequently, defendant argues, by listing the alleged benefit received from the reduction in the charge, the court is presuming that the prosecution could establish the requisite elements of the crime.
It is unclear whether the defendant is arguing that there was no specific intent to kill or cause the victim great bodily harm because he and Crow were friends or because defendant was intoxicated, or both. The defendant's intoxication at the time of the commission of the crime is immaterial, however, unless the defendant can show that the intoxicated condition negated specific criminal intent. LSA-R.S. 14:15(2). The victim was obviously extremely intoxicated. Post mortem blood tests revealed that Crow's blood alcohol level was .33 per cent. Defendant stated that he was also drinking, however, there is nothing in the record to indicate the extent of defendant's condition in that regard. Nevertheless, even if we presume that the defendant was intoxicated, a finding of specific intent is not precluded merely upon a showing of intoxication. There must be some indication that defendant was so intoxicated as to obviate specific intent. Such is not the case here. The fashion of the victim's death and the statement made by defendant exhibit a repetitive and continuous assault indicative of specific intent. See State v. Harris, 527 So.2d 1140 (La.App. 1st Cir.1988).
Moreover, from a reading of his voluntary statement after his arrest, it is clear that the defendant intended to inflict great bodily *289 harm on the victim by repeatedly kicking him in the head. We agree with the trial court that the defendant indeed got a "break" when the charge was reduced to manslaughter. The reduced charge lessened defendant's prison exposure from life without benefit of probation, parole or suspension of sentence to a maximum of 40 years with benefit. The trial court did not err in taking this fact into consideration. A plea bargain that brings about a substantial benefit is a legitimate consideration in sentencing. State v. Stephens, 604 So.2d 203 (La.App. 2d Cir. 1992).
The defendant also asserts that his criminal history reflects no convictions or even arrests for any violent offenses. The pre-sentence investigation report reveals that the defendant has an extensive history of arrests for various offenses. He was arrested in January 1987 for carnal knowledge of a juvenile and contributing to the delinquency of a minor. This matter was "passed by the grand jury." In August of 1987, he was arrested for aggravated battery, which was reported as "closed, lacked evidence." An August 1988 arrest for theft was nolle prossed, and he was not billed for an April 19, 1990 simple robbery. All of the foregoing occurred either in Rayville or in Richland Parish. In June of 1990, he was arrested in Lafayette for simple battery and aggravated assault, the disposition of which is unknown. He has an arrest and conviction in Lafayette in 1990 for misdemeanor worthless checks. In September of 1991, he was placed on probation for a forgery conviction and for possession of drug paraphernalia. In April of 1992, charges were refused by the Lafayette district attorney for the offense of the unauthorized use of a movable. He has arrests for forgery, theft, and possession of stolen goods in December of 1992 in Lafayette, the disposition of which is "unknown." He has various driving convictions, including driving under suspension and DWI. As a juvenile, he was adjudicated for the offense of simple burglary in December of 1985.
With respect to the absence of violent crimes, we note the defendant's aggravated battery arrest in August of 1987 occurred when the defendant stabbed another individual in the back. The fact that both subjects had been drinking may have influenced the district attorney's decision not to charge the defendant. It appears "by process of elimination" that the June 1990 simple battery and aggravated assault arrest in Lafayette is the incident alluded to by the court involving the defendant attacking his previous wife. Furthermore, it appears that the defendant had been arrested in Alexandria a day or so before the instant offense for stealing a motor vehicle.
Finally, the defendant asserts that the trial court's statement that the "victim was beaten so badly that he was unrecognizable by the people who arrived at the scene" was a blatant exaggeration, with the majority of the wounds being entirely consistent with a typical drunken brawl. The statement was by no means an exaggeration and, in fact, was obviously taken from the pre-sentence investigation report containing the official statement of Chief Deputy Charles McDonald, the first officer to arrive at the scene of the crime. The statement is also supported by the autopsy report which described the condition of the victim. We describe briefly the wounds as follows: multiple incisions of the face and scalp, two skull fractures, multiple incisions of the nose and right cheek, multiple incisions on the neck characteristic of those caused by a serrated weapon, multiple abrasions and contusions on the body, a broad abrasion around the victim's neck, and a large irregular contusion on the anterior neck. The victim was obviously severely beaten, cut, stabbed, and strangled. His death was caused by the combination of blood loss and strangulation. Those who found him said they could not recognize him because his face was so full of blood from the wounds. This was hardly a typical drunken brawl.
For these reasons, we find that the brutality displayed by the defendant in the commission of this crime, along with the several aggravating factors enumerated by the trial court and discussed hereinabove, significantly differentiates this case from the "typical" manslaughter. We agree that the charge to which the defendant pled nolo contendere does not adequately describe his conduct. The victim, who weighed a mere 120 pounds, was beaten so badly that he could not be *290 recognized. The defendant admitted that he repeatedly kicked the victim in the face while he was on the ground. The victim was cut, stabbed, and strangled with his own sock. The act can be characterized only as a brutal murder.
A finding that one or more aggravating circumstances exists to a significant degree differentiates a case from the typical case. Louisiana Sentencing Guidelines § 209B. Upon such a finding, the grid range for a typical case becomes inapplicable. State v. Wilson, 623 So.2d 200 (La.App. 2d Cir.1993), writ denied, 629 So.2d 399 (1993); State v. Strother, 606 So.2d 891 (La.App. 2d Cir. 1992), writ denied, 612 So.2d 55 (La.1993).
We therefore consider whether the sentence is constitutionally excessive. A sentence violates LSA-Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. State v. Lobato, 603 So.2d 739 (La.1992). We conclude this sentence is not and, also, it is not disproportionate to the offense committed and does not shock our sense of justice. State v. Richardson, 545 So.2d 714 (La.App. 2d Cir.1989). The sentence of the trial court is therefore affirmed.
In imposing sentence, the court must give the defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. LSA-C.Cr.P. Art. 880. Failure to do so is error patent. State v. Allen, 571 So.2d 758 (La. App. 2d Cir.1990). The record shows that the defendant was in custody prior to the imposition of sentence. The sentence should be amended to reflect credit for the time served. State v. Coleman, 605 So.2d 231 (La.App. 2d Cir.1992); State v. Hughes, 587 So.2d 31 (La.App. 2d Cir.1991), writ denied, 590 So.2d 1197 (La.1992).
For the foregoing reasons, the defendant's conviction and sentence are affirmed. The sentence is amended to reflect credit for time served.
AFFIRMED.
NOTES
[1] A court may accept a plea of nolo contendere only if the offense charged is not a capital offense. The plea is considered as a conviction. LSA-C.Cr.P. Art. 552.