h DREW, Judge.
Convicted of two counts of forgery, Anthony Hopson was adjudicated a second felony offender, and sentenced to two consecutive terms of 15 years at hard labor, without benefit of probation, parole or suspension of sentence. We affirm the defendant’s convictions. However, we vacate his sentences and remand this matter to the trial court for resentencing. Our review of the record suggests that the sentence re-imposed not exceed 15 years at hard labor, to be served concurrently, and without benefit of probation or suspension of sentence.
FACTS
Hopson and Janie D. Mercer were longtime family friends, and lived on the same street in Winnsboro. Mercer had recently moved back to Winnsboro from Baton Rouge and Mississippi. Mercer received a phone call from a local store that two checks written on her account had been returned marked “account closed.” The checks, dated June 6, 1999 and June 16, 1999 (10 days apart) were written on a Baton Rouge account that Mercer had closed when she moved back to Winnsboro. Each check was in the amount of $60.00, had a signature of “Janie D. Mercer” and was payable to the defendant, “Anthony Hopson.” Mercer had not written any of the writing on either of the two checks. The back of each check had the defendant’s endorsement, phone number and address. These were pathetic crimes, destined to fail.
Mercer testified that she contacted the defendant, who admitted writing the checks to pay a cellular phone bill. Mercer was unsure how the defendant obtained the checkbook, but at trial testified that she had thrown j gthe checkbook in the trash. Mercer further testified that she would have loaned the defendant the money if he had asked. She then asked the defendant to go down and pay off the checks. When he did not, the present forgery charges were filed.
The defendant testified at trial, and admitted that he had written the checks, including signing Mercer’s name. He testified that he had done so with the permission of Mercer, because she had trouble cashing checks with out-of-town identification. He did not explain why Mercer did not sign the checks. He testified that he gave Mercer the money from cashing the two checks. He further testified that he had worked out an agreement with the store to pay off the checks, but was unable to do so after he was picked up on a parole violation of having a “dirty” urine screen. When the defendant was arrested on the present charge in August 1999, he gave a statement basically the same as his trial testimony. A six-person jury heard both *1094 versions of the incident and unanimously voted to convict the defendant.
After his conviction, the state filed a habitual offender bill of information, alleging that, with the present convictions, the defendant was a fourth felony offender. The alleged felony convictions were:
1. September 25, 1995 conviction in Franklin Parish for access device fraud.
2. February 4, 1997 conviction in Franklin Parish for access device fraud.
3. May 18, 1998 conviction in Catahoula Parish for forgery.
4. The present convictions for forgery.
laThe defendant filed written objections to the habitual offender bill of information, alleging defects with the 1995 Franklin Parish conviction and the 1998 Catahoula Parish conviction. The defendant did not assert any objections to the 1997 Franklin Parish conviction.
On May 8, 2001, a hearing was held on the defendant’s habitual offender status. Before the hearing began, the state stipulated that the defendant’s objections were correct as to alleged procedural defects in the 1995 Franklin Parish and the 1998 Catahoula Parish convictions. The state proceeded forward, alleging the defendant to be a second felony offender, based on using the February 4, 1997 Franklin Parish conviction as a predicate offense.
The state called Franklin Parish Deputy Sheriff Tim Pylant as a witness. Prior to his testifying, the state sought to introduce into evidence the bill of information, transcript and minutes of the February 4, 1997 Franklin Parish conviction. The defendant objected to lack of foundation and lack of identification of the defendant being the same “Anthony Hopson” in that felony conviction. The trial court deferred a ruling on this evidence, pending the state establishing the proper foundation through the deputy’s testimony.
Deputy Pylant then testified that he was the investigating officer in the charges that lead to the February 4, 1997 conviction. He identified the defendant as the “Anthony Hopson” arrested and subsequently convicted on February 4, 1997. The deputy identified the bill of information, guilty plea transcript and minutes of the February 4, 1997 conviction, as applying to the |4defendant. After this testimony, the state moved to introduce those exhibits into evidence. The defendant asserted no new objection to the introduction of the proof of the February 4, 1997 conviction. The defendant did not question Deputy Pylant.
The trial court adjudicated the defendant as a second felony offender. In sentencing the defendant, the trial court extensively reviewed the defendant’s PSI, which showed the defendant had at least six felony convictions, dating from 1967. Several involved some type of petty forgery, theft, or similar artifice.
The defendant argued to the trial court not to imprison him because he needed to take care of his aged mother. However, this argument was apparently not persuasive, as the trial court sagely noted that one of the defendant’s prior felony convictions involved theft by fraud from his mother.
The trial court sentenced the defendant as a habitual offender to two 15-year sentences, without benefit of probation, parole or suspension of sentence, and ordered the sentences be served consecutively.
DISCUSSION
The first issue raised by defendant is whether there was sufficient evidence to convict. The standard of review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the *1095 essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
At trial, the defendant and the victim gave the jury two different versions as to why the two checks were entirely written by the defendant. The defendant testified that he did it to help Mercer cash an out-of-town check. She testified that she knew nothing about the defendant writing the checks, and did not receive any of the money. She further testified that the defendant admitted to her that he used the money to pay his phone bill. The defendant is now arguing that the jury was in error to accept the victim’s version of the facts.
The jury found Ms. Mercer’s version of events more credible. The defendant has provided this court no basis or authority by which to substitute the defendant’s version.[1] The question then becomes whether the state’s evidence, viewed in a light most favorable to the state, supports a verdict of guilty of forgery.
La. R.S. 14:72 defined the crime of forgery (at the time of the offense) as:
Forgery is the false making or altering, with intent to defraud, of any signature to, or any part of, any writing purporting to have legal efficacy.
Issuing or transferring, with intent to defraud, a forged writing, known by the offender to be a forged writing, shall also constitute forgery.
| (A forgery must be committed with the specific intent to defraud. State v. Wade, 375 So.2d 97 (La.1979), U.S. cert. denied. “An essential ingredient of the crime of forgery is specific intent....” State v. Jackson, 258 La. 632, 247 So.2d 558, 560 (La.1971). See also the Reporter’s Comment to La. R.S. 14:11, which states, in part:
... in some crimes the production of certain consequences plus a specific intent to produce or accomplish some prescribed consequences is necessary (for example, “Forgery is the false making or altering, with intent to defraud, of any signature ... ”). Such an intent is a “specific intent.”
In this case there is no question that the defendant “forged” Mercer’s signature on her checks. That element of the crime was established. But, the defendant strenuously argues that the state has not proven that his writing out Mercer’s signature on the checks was done with the intent to defraud anybody. Specific intent is a state of mind and need not be proved as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Fuller, 414 So.2d 306 (La.1982); State v. Doby, 540 So.2d 1008 (La.App. 2d Cir.), writ denied, 544 So.2d 398 (La.1989). Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act. La. R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), U.S. cert. denied. State v. McCray, 621 So.2d 94 (La.App. 2d Cir.1993).[2]
*1096 | .¡.Viewed in a light most favorable to the state, this evidence clearly establishes that the defendant, when he forged Mercer’s signature on her checks, had the specific intent to defraud her, the convenience store, and the bank of money. This assignment is therefore without merit.
Second, the defendant asserts there was insufficient evidence to adjudicate him as a habitual offender. He does not assert any specific errors or defects. Instead, the defendant merely noted that the evidence of the 1997 conviction, introduced at his hearing, was not in the appellate record.
After the defendant was convicted of two counts of forgery, the state filed a habitual offender bill of information, alleging that, with those convictions, the defendant was a fourth felony offender. The defendant filed written objections to the 1995 Franklin Parish conviction, and the 1998 Catahoula Parish conviction. The state conceded that the defendant’s objections as to these two predicate convictions were valid, and proceeded forward with only one predicate felony conviction, the 1997 Franklin Parish forgery conviction. The defendant’s written objections did not assert any constitutional or procedural defects as to that felony conviction.
At the habitual offender hearing, the trial court did initially sustain the defendant’s lack of foundation objection regarding the records of the 1997 Franklin Parish conviction. But, after the state’s witness identified the defendant as the Anthony Hopson who pled guilty in the 1997 conviction, the bill of information, minutes and guilty plea transcript of the 1997 conviction, were introduced into evidence without further objection.
IsThe record lodged with this court did not contain the evidence filed as to the 1997 conviction. The defendant noted the absence of this evidence in brief. The evidence of the 1997 conviction was subsequently forwarded to this court. A review of this evidence shows it to be the bill of information, the minutes, and the transcript of the February 4, 1997 guilty plea.
However, the presence or absence of this evidence in the record of this court is not necessary for the resolution of this issue. The record shows that although the defendant did file written objections to the habitual offender bill of information filed against him, he did not raise any objections as to the voluntariness of the 1997 Franklin Parish guilty plea. La. R.S. 15:529.1(D)(l)(b) provides the procedural mechanisms by which a defendant can object to the use of a deficient prior conviction:
If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence. (Emphasis added.)
It is after a defendant objects to the voluntariness of the earlier plea or its *1097 being a knowing plea, that the state must affirmatively show through a contemporaneously recorded transcript that the plea was voluntary and made with an awareness of its consequences. State v. Shelton, 621 So.2d 769 (La.1993); State v. Bolton, 379 So.2d 722 (La.1979). The defendant |gdid not make any written objections as to the 1997 Franklin Parish guilty plea being constitutionally flawed. Thus, the defendant conceded the 1997 conviction contained in the habitual offender bill of information. Because the defendant failed to raise any objections prior to the habitual offender hearing and the state proved that the defendant had been convicted of two felonies, this assignment is without merit.
Finally, the defendant argued the enhanced sentences were excessive when applied to the facts and circumstances of this particular case and defendant, and the trial court erred in requiring that the two sentences be served consecutively.
The defendant argued that the judge failed to consider several mitigating factors in imposing a 30-year sentence. Specifically, the defendant asserts that the forged checks were of small amounts; there was no violence or viciousness involved; and there was no physical danger to the victim or the general public. After sentencing, the defense filed a motion to reconsider the sentence, asserting these grounds for reconsideration, and further asserting that the two sentences should have run concurrently, instead of consecutively. The trial court denied the motion without a hearing.
The question becomes: Does a combined sentence of 30 years for these two pitiful crimes, occurring 10 days apart, shock the sense of justice? We find in the affirmative.[3]
*1098 _JjgIn the present case, the defendant was sentenced as a second felony-offender. As a result, his sentencing range was one-half the maximum term to twice the maximum term, or 5 years to 20 years for each conviction. The trial court sentenced the defendant within the habitual offender sentencing range, but near the maximum allowable sentence. As a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender. State v. Brisco, 33,179 (La.App. 2d Cir.4/5/00), 756 So.2d 644, writ denied, 2000-1478 (La.5/25/01), 792 So.2d 749; State v. Grissom, 29,718 (La.App. 2d Cir.8/20/97), 700 So.2d 541.
This court upheld a 10 year sentence for forgery in State v. Winzer, 465 So.2d 817 (La.App. 2d Cir.1985), for a third felony offender who bargained to plead guilty in return for the state’s agreement not to file a habitual offender bill. In State v. Deville, 525 So.2d 574 (La.App. 3d Cir. 1988), a 10-year sentence was found to be not constitutionally excessive, based on the defendant’s numerous convictions for issuing worthless checks and forgery. In State v. Davis, 571 So.2d 210 (La.App. 3d Cir.1990), an eight-year sentence was affirmed for a 28-year-old defendant who had two prior felony convictions for theft and attempted forgery. His plea bargain achieved the dismissal of two counts of forgery and one count of attempted forgery. In that case, the trial court found that defendant’s previous prison terms had not deterred him from committing more forgeries.
In State v. Gant, 29,169 (La.App. 2d Cir.1/22/97), 687 So.2d 660, writ denied 97-0465 (La.6/30/97), 696 So.2d 1006, a 10-year sentence was affirmed for an 18-year-old, pregnant female, who had broken into her aunt’s home, stolen a checkbook, and written $600.00 worth of checks at area stores. In affirming what was accepted as a high sentence, this court noted Ms. Gant’s criminal history reflected a “propensity to commit thefts and forgeries.”
This instant case involves petty forgery charges that are not connected with other, more serious charges. For example, in State v. Gibson, 596 So.2d 832 (La.App. 5th Cir.1992), the Fifth Circuit affirmed a 32-year sentence for a fourth felony offender, which included a theft conviction and a conviction for forgery of a $461.00 check.
The 15-year sentence for each conviction is within the trial court’s discretion, based on the defendant’s adjudication as a second felony offender. Even though the defendant is technically “only” a second felony offender, the pre-sentence investigation report reflects a long history of 11zrepeated petty thefts and forgeries, usually against family members and friends. As such, his individual sentences are within the limits for a second felony offender.
La.C.Cr.P. art. 883 provides;
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court *1099 expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
Concurrent sentences arising out of a single cause of conduct are not mandatory and consecutive sentences under those circumstances are not necessarily excessive. State v. Williams, 445 So.2d 1171 (La.1984); State v. Pickett, 628 So.2d 1333 (La.App. 2d Cir.1993), writ denied 94-0348 (La.5/20/94), 637 So.2d 476. It is within a trial court’s discretion to order sentences to run consecutively rather than concurrently. State v. McCray, 28,531 (La.App. 2d Cir.8/21/96), 679 So.2d 543. All factors in the ease are to be considered in choosing whether to impose consecutive or concurrent sentences. State v. Beverly, 448 So.2d 792 (La.App. 2d Cir.), writ denied, 450 So.2d 951 (1984). Among the factors to be considered are the defendant’s criminal history, the gravity or dangerousness of the offense, the viciousness of the crimes, the harm done to the victims, whether the defendant constitutes an unusual risk of danger to the public, defendant’s apparent disregard for the property of others, the potential for defendant’s rehabilitation, and whether defendant has received a benefit |1sfrom a plea bargain. State v. Wilson, 28,403 (La.App. 2d Cir.8/21/96), 679 So.2d 963.
A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence of record. State v. Strother, 606 So.2d 891 (La.App. 2d Cir.1992), writ denied, 612 So.2d 55 (La.1993). When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. State v. Green, 614 So.2d 758 (La.App. 2d Cir. 1993). This record does not contain sufficient factors to support consecutive sentences. The two crimes were part of a single course of conduct. The amounts stolen were small. There was no violence, and no history of violent crimes. Noteworthy is the victim’s testimony that she would have gladly loaned the money to the defendant. Only after the defendant failed to pay the store were the cheeks turned over to the district attorney for collection. These were petty crimes arising from the same course of conduct, which the victim testified caused her minimal harm.
It is further noted that the trial court sentenced the defendant to serve the two consecutive terms without benefit of probation, parole or suspension of sentence. La. R.S. 15:529.1(G) provides:
Any sentence imposed under the provisions of this Section shall be without benefit of probation or suspension of sentence.
The imposition of the two sentences without benefit of parole is therefore error patent.
The convictions are affirmed. The sentences are vacated, and this case is remanded to the trial court with instructions that, on this record, the 114maximum sentence which appears appropriate on each conviction is fifteen years, with the two sentences to be served concurrently, and without benefit of probation or suspension of sentence.
CONVICTIONS AFFIRMED. SENTENCES VACATED AND REMANDED FOR RESENTENCING, WITH INSTRUCTIONS.
NORRIS, J., concurs with written reasons.

. The Jackson due process standard of review does not permit an appellate court to substitute its appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. An appellate court does not assess credibility or re-weigh the evidence. State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132.

. The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Butler, 322 So.2d 189 (La.1975); State v. Dean, 528 So.2d 679 (La.App. 2d Cir.1988). In reviewing the correctness of such a determination, the court should review the evidence in a light most favorable to the prosecution and must determine if the evi *1096 dence is sufficient to convince a reasonable trier of fact of the guilt of the defendant beyond a reasonable doubt as to every element of the offense. Jackson v. Virginia, supra; State v. Huizar, supra.

. Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.
Additionally, the trial court has wide discretion to sentence within the statutory limits. Where a defendant has pled guilty to an offense which does not adequately describe his conduct or has received a significant reduction in potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence possible for the pled offense. State v. Black, 28,100 (La.App. 2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430. Absent a showing of manifest abuse of that discretion, the court will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App. 2d Cir.4/2/97), 691 So.2d 345. The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App. 2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App. 2d Cir.4/2/97), 691 So.2d 864; State v. Hudgins, *1098 519 So.2d 400 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1143 (La.1988). Moreover, there is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App. 2d Cir.3/1/00), 754 So.2d 392; State v. Callahan, 29,351 (La.App. 2d Cir.2/26/97), 690 So.2d 864, writ denied, 97-0705 (La.9/26/97), 701 So.2d 979. The record adequately indicates the trial court was aware of the matters urged by the defense prior to imposing sentence.